## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARAYIK SHAHBAZIAN and MIKE SPANOS, individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> PROGRESS SOFTWARE CORPORATION, <br><br> Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs ARAYIK SHAHBAZIAN and MIKE SPANOS ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Class Members"), through their undersigned counsel, bring this action against Defendant Progress Software Corporation ("Progress" or "Defendant"), based upon personal knowledge and, upon information and belief, including from their counsel's investigation. Plaintiffs seek monetary damages, injunctive relief, and/or all appropriate equitable remedies.

## I.      NATURE OF THE ACTION

1.    This proposed Class Action is brought by individuals, including consumers, whose personal data was accessed and exposed by an unauthorized third-party in a data breach ("Data Breach") concerning Progress's MOVEit Transfer and MOVEit Cloud software ("Class Members") that, as of August 2023, has affected more than 600 organizations and over 40 million people[1] and, to date, likely affects many more.

---

[1] Raphael Satter and Zeba Siddiqui, "MOVEit hack spawned over 600 breaches but is not done yet -cyber analysts" REUTERS, Aug. 8 2023, https://www.reuters.com/technology/moveit-hack-spawned-around-600-breaches-isnt-done-yet-cyber-analysts-2023-08-08/.

2.      According to a U.S. Cybersecurity and Infrastructure Agency ("CISA") and FBI alert, the Data Breach began in May 2023 when "the CL0P Ransomware Gang, also known as TA505, began exploiting a previously unknown structured query language (SQL) injection vulnerability (CVE-2023-34362) in Progress Software's managed file transfer solution known as MOVEit Transfer…"[2]

3.      Progress states that it first learned of the data breach on May 28, 2023, reported it to customers on May 30, 2023, and reported it to the SEC and its investors on June 5, 2023.[3]

4.      Progress sells MOVEit Transfer, "On-Premises Managed File Transfer (MFT) software," which provides "secure collaboration and automated file transfers of sensitive data in compliance with SLAs, governance and data protection regulations" including "PCI, HIPAA, CCPA/CPRA and GDPR, SOC 2 type2, ISO 27001, SOX, BAEL I/II/III, FIPS, FISMA, GLBA, FFIECT, [and] ITAR," and which can "[a]ssure the secure and compliant transfer of protected data."[4]

5.      Progress also sells "MOVEit Cloud: Managed File Transfer as-a-Service" which it describes as a "trusted and proven SaaS solution," that "provides full security, reliability and compliance with the convenience of a cloud-based service" that has been "auditor-certified PCI, SOC 2 type 2, and HIPAA compliant and ensure CCPA/CPRA and GDPR readiness in external file transfer activities involving personal data" allowing customers to enjoy "best in class security…."[5]

---

[2] *See* CISA and FBI Release Advisory on CL0P Ransomware Gang Exploiting MOVEit Vulnerability, https://www.cisa.gov/news-events/news/cisa-and-fbi-release-advisory-cl0p-ransomware-gang-exploiting-moveit vulnerability (last visited Nov. 27, 2023).

[3] *See* Form 8-K filed 6/5/2023, https://investors.progress.com/static-files/e8a76c9d-310a-4762-8853-e92a1952d6a4 (last visited Nov. 27, 2023).

[4] *See* MOVEit Transfer, https://www.progress.com/moveit/moveit-transfer (last visited Nov. 27, 2023).
[5] *Id.*

6.     On May 31, 2023, Progress posted an article on its website alerting its customers that:

> Progress has discovered a vulnerability in MOVEit Transfer that could lead to escalated privileges and potential unauthorized access to the environment. If you are a MOVEit Transfer customer, it is extremely important that you take immediate action as noted below in order to help protect your MOVEit Transfer environment.[6]

7.     On June 5, 2023, Progress provided investors the following statement regarding the May 28, 2023 discovery:

> MOVEit technical support team at Progress […] received an initial customer support call indicating unusual activity within their MOVEit Transfer instance. An investigative team was mobilized and discovered a zero-day vulnerability in MOVEit Transfer. The investigative team determined that the vulnerability could provide for unauthorized escalated privileges and access to the customer's underlying environment. Following such discovery, on May 30, 2023, Progress promptly (i) reached out to all MOVEit Transfer and MOVEit Cloud (Progress' cloud-hosted version of MOVEit Transfer) customers in order to apprise them of the vulnerability and alert them to immediate remedial actions, and (ii) took down MOVEit Cloud for investigation. In parallel, the engineering team at the Company worked to develop a patch for all supported versions of MOVEit Transfer (including MOVEit Cloud), which was released across all impacted systems on May 31, 2023 and allowed for the restoration of MOVEit Cloud that same day.[7]

8.     On June 9, 2023, Progress informed its customers that it "partnered with third-party cybersecurity experts to conduct further detailed code reviews as an added layer of protection for our customers," which uncovered additional vulnerabilities that could potentially be used by a bad actor to stage an exploit."[8] Progress described these vulnerabilities as "distinct from the previously

---

[6] MOVEit Transfer Critical Vulnerability (May 2023) (CVE-2023-34362), https://community.progress.com/s/article/MOVEit-Transfer-Critical-Vulnerability31May2023 (last visited Nov. 27, 2023).

[7] Form 8-K filed 6/5/2023, https://investors.progress.com/static-files/e8a76c9d-310a-4762-8853e92a1952d6a4 (last visited Nov. 27, 2023).

[8] *MOVEit Transfer and MOVEit Cloud Vulnerability*, https://www.progress.com/security/moveit-transfer-and-moveit-cloud-vulnerability (last visited Nov. 27, 2023).

reported vulnerability shared on May 31, 2023.[9]

9.      On June 16, 2023, Progress stated it "reported the public posting of a new SQLi vulnerability that required us to take down HTTPs traffic for MOVEit Cloud and to ask MOVEit Transfer customers to take down their HTTP and HTTPs traffic to safeguard their environments."[10]

10.     On June 18, 2023, Progress stated that a "third party publicly disclosed a vulnerability impacting MOVEit Transfer and MOVEit Cloud in a way that did not follow normal industry standards, and in doing put our customers at increased risk of exploitation."[11]

11.     On July 7, 2023, Progress informed its investors that "certain MOVEit Transfer customers have reported that malicious threat actors have exploited the MOVEit Vulnerability to obtain access to their environments and portions of their sensitive customer data" and that two "dedicated MOVEit Cloud customers have reported that malicious threat actors have exploited the MOVEit Vulnerability to obtain access to its environment."[12] Third parties subsequently notified Progress of additional product vulnerabilities which Progress reportedly patched. *Id.* On October 10, 2023, Progress informed its investors that one of those MOVEit Cloud customers reported "certain personally identifiable information was exfiltrated."[13]

12.     Progress's MOVEit Transfer and MOVEit Cloud servers contained Personally Identifiable Information ("PII"). PII is "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying

[9] *Id.*
[10] MOVEit Transfer and MOVEit Cloud Vulnerability, https://www.progress.com/security/moveit-transfer-and-moveit-cloud-vulnerability (last visited Nov. 27, 2023).
[11] *Id.*
[12] Form 10-Q filed 7/7/2023, https://investors.progress.com/static-files/90ee1d91-3191-40f0-97dd-e94d6aa26f7d (last visited Nov. 27, 2023).
[13] 10-Q filed 10/10/2023 at 33, https://investors.progress.com/static-files/7c3413407f47-4271-ad55-3dcc6bcb2871 (last visited Nov. 27, 2023).

information." 2 C.F.R. § 200.79.

13.     The PII that Progress failed to adequately protect from unauthorized use by third parties includes, but is not limited to, individuals' Social Security Numbers; dates of birth; driver's license/state identification numbers; taxpayer identification numbers; student identification numbers; medical information (*e.g.*, diagnosis, treatment type, admission date); health insurance information; and billing/claim information.

14.     Progress's failure to reasonably secure consumers' PII from the foreseeable risk of its being stolen through its vulnerable MOVEit software, as exploited by CL0P, caused the Data Breach.

15.     Plaintiffs bring this class action on behalf of all similarly situated consumers harmed by the 2022 Data Breach, assert claims of negligence, breach of implied contract, breach of third-party beneficiary contract, unjust enrichment, invasion of privacy, violation of California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and violation of California Customer Records Act ("CCRA") Cal. Civ. Code § 1798.80 *et seq.*, and seek compensatory damages, including restitution and disgorgement, punitive damages, declaratory and injunctive relief, and attorneys' fees.

## II.     <u>PARTIES</u>

### A.     <u>Plaintiffs</u>

16.     Plaintiffs Arayik Shahbazian and Mike Spanos, bring this action on behalf of themselves and those similarly situated in a representative capacity for individuals across the United States and, in addition, on behalf of citizens and residents of California. Despite knowing of the substantial cybersecurity risks it faced, Defendant, through its actions described herein, caused Plaintiffs' valuable PII to be accessed and exposed by unknown and unauthorized criminals, causing them present, immediate, imminent, and continuing increased risk of harm.

17.    Plaintiff Shahbazian is a citizen and resident of the State of California. Progress obtained Plaintiff Shahbazian's Personal Identifiable Information through Progress's customer, Vio Bank, which is a division of MidFirst Bank Corporation, a federally chartered savings association. As used in this Complaint, "Vio Bank" includes and means "MidFirst Bank," acting by and through its Vio Bank division.

18.    Plaintiff Mike Spanos is a citizen and resident of the State of California. Progress obtained Plaintiff Spanos's Personal Identifiable Information through Progress's customer, Flagstar Bank, National Association, ("Flagstar Bank") which is a wholly owned subsidiary of New York Community Bank.  As used in this Complaint, "Flagstar Bank" includes and means "New York Community Bank," acting by and through its Flagstar Bank subsidiary.

**B.    <u>Defendant</u>**

19.    Defendant Progress Software Corporation ("Progress" or "Defendant") is a Delaware corporation with its principal place of business located at 15 Wayside Road, Suite 400, Burlington, Massachusetts.

20.    Progress is a provider of products to develop, deploy and manage high-impact business applications. Progress provides its platforms to hundreds of thousands of enterprises, including financial institutions; education institutions; federal and state agencies; state retirement systems; news organizations; healthcare organizations; law firms; and corporations; which obtained and maintained Plaintiffs' Personal Information that was compromised in the Data Breach.

### III.    <u>JURISDICTION AND VENUE</u>

21.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and

minimal diversity exists because at least one member of the Class, as defined below, is a citizen of a different state than Defendant.

22.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, has sufficient minimum contacts with this District and has purposefully availed itself of the privilege of doing business in this District, such that it could reasonably foresee litigation being brought in this District.

23.    Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because the Defendant's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Progress Collects Consumers' Personal Identifiable Information

24.    It is the business of Progress to collect, manage, and transfer data, including consumers' PII.

25.    Progress expresses in its Privacy Policy that it is "committed to protecting the privacy of individuals who visit the Company's web sites" and those "who register to use our services."[14]

26.    Progress states that it uses "personal information" that it "collects," in part:

- to "share Personal Information and other information with other companies who may provide [ ] information about the products and services they offer,"

- to "share [ ] aggregate data with [Progress's] affiliates, agents, advertisers, manufacturers, business partners, and to current and prospective business partners

---

[14] Progress Privacy Policy, https://www.progress.com/legal/privacy-policy (last visited Nov. 27, 2023).

and to other third-parties,"

- to "employ other companies and individuals to perform functions on [Progress's] behalf," for which "[t]hese other companies will have access to the Personal Information we collect…"

*Id*. Further, Progress states that it "may retain, aggregate, use, and resell any non-personal information (including other information) collected in connection with any use of the Sites or our products and services both during your use of the same and after such use has ended." *Id*.

27.     Progress therefore openly and intentionally collects, stores, and uses customers information, including PII.

28.     Progress knows the sensitivity of the customer information it has control over and explicitly recognizes that such information, including PII, is afforded protection under law.

29.     In a notice to customer residents of California, Progress defines "Personal Information" as "information that identifies, relates to, describes, is capable of being associated with, or could reasonably be linked, directly or indirectly, with you or your household such as your real name, alias, postal address, unique personal identifier, online identifier Internet Protocol address, email address, account name, other similar identifiers…"[15] It defines "Sensitive Personal Information" as "Social Security number (SSN), driver's license, state identification card, or passport number; account log-in, financial account, debit card, or credit card number in combination with any required security or access code, password, or credentials allowing access to an account."[16]

30.     Progress explicitly recognizes that it sells personal information, broadly defined as

---

[15] Supplement Privacy Notice for Residents of California, https://www.progress.com/legal/california-resident-privacy-notice (last visited Nov. 27, 2023).
[16] *Id*.

" 'selling, renting, releasing, disclosing, disseminating, making available, transferring, or otherwise communicating orally, in writing, or by electronic or other means, a consumer's personal information by the business to another business or a third party for monetary or other valuable consideration.' " [17]

31.     Progress states that it collects the following categories of personal information:

- Identifiers (e.g. real name, address, social security number)

- Characteristics of protected classification under California or Federal law;

- Commercial information (e.g. products purchased, obtained, or considered, or other purchasing or consuming histories)

- Internet or other electronic network activity (e.g. browsing history, search history, or a consumer's interaction with a website)

- Geolocation data

- Audio, visual, and similar information

- Professional or employment related information

- Education information (information that is not publicly available personally identifiable information as defined in the Family Educational Rights and Privacy Act)

- Inferences drawn from any of the information above to create a profile about a consumer (reflecting the consumer's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities and attitudes)

- Account log-in, password, or credentials allowing access to an account.[18]

32.     Progress obtains the categories of information listed above from the following categories of sources:

- Directly from you. For example, from forms you complete or products and services you purchase from us.

---

[17] *Id.*
[18] *Id.*

- Indirectly from you. For example, from observing and/or tracking your browsing activity on our websites.

- From our Partners. For example, when they register your contact information with us as a lead or an end user.

- From third-party marketing companies who provide us with sales leads.

- Through your interactions with us on social media (e.g., Facebook, LinkedIn, Twitter, Instagram, etc.)

- From events or webinars organized or sponsored by us.[19]

Further, Progress states that its "business purposes" for the collection and use of this information includes, in part, "[t]o optimize our marketing operations," "[t]o personalize your website experience and to deliver content, product and service offerings relevant to your interests, including targeted offers and ads through our website and via email," and "[f]or targeted marketing campaigns."[20]

33.    Additionally, Progress states that it may share personal information with third parties, including with more than 330 companies Progress calls "partners;" as well as Progress subsidiaries and affiliates, internet cookie data recipients, data analytics providers, and social medial networks; and "Industry Analysts."[21]

34.    Progress collected consumers' PII and failed to prevent it from being accessed or exposed by an unauthorized third party in the Data Breach.

**B.    Progress has a Duty to Protect Consumers' Personal Identifiable Information**

35.    Progress has a duty to protect consumers' PII. In its 2022 Form 10-K, Progress recognizes this duty, stating:

> If our security measures are breached, our products and services may be perceived as not being secure, customers may curtail or stop using our products and services, and we may incur significant legal and financial exposure. including but not limited to from loss of

---

[19] *Id.*
[20] *Id.*
[21] *Id.*

> customer or company data, loss of customers or otherwise. Our
> products and services involve the storage and transmission of our
> customers' proprietary information and may be vulnerable to
> unauthorized access, computer viruses, cyber-attacks, distributed
> denial of service attacks and other disruptive problems.[22]

36.     As a sophisticated market actor, Progress is aware of its legal obligations to

safekeep customers' PII and to notify customers if their information is exposed.

37.     As described above, Progress explicitly recognized its duties to comply with

California law regarding data and privacy, including disclosing related rights regarding data

affecting California customers.[23]

38.     Further, the FTC has brought enforcement actions against businesses for failing to

adequately and reasonably protect customer and consumer data, treating the failure to employ

reasonable and appropriate measures to protect against unauthorized access to confidential

consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

Orders resulting from these actions further clarify the measures businesses must take to meet their

data and cyber security obligations.

39.     Progress also recognizes that the Payment Card Industry Data Security Standard

(PCI DSS) "refers to a list of 12 security standards related to the processing of credit cards and

credit card data" and that failure to comply can result in heavy fines, and that if a website gets

hacked, a "company will be on the line for the data breach and monetary loss" so "implementing

the security standards above is critical."[24] According to Progress, the FTC's "Safeguards Rule"

"aims to protect private personal information that financial institutions collect from customers" so

---

[22] Form 10-K filed 1/27/2023 at 12 (hereinafter "2022 Form 10-K")
https://investors.progress.com/staticfiles/5c0861cf-4a3f-4f2d-b265-6c4685340c65 (last visited Nov. 27, 2023).

[23] Supplemental Privacy Notice for Residents of California, https://www.progress.com/legal/california-resident-privacy-notice (last visited Nov. 27, 2023).
[24] Suzanne Scacca, *The High Stakes of Regulatory Compliance and Digital Products, Progress*,
https://www.progress.com/blogs/high-stakes-regulatory-compliance-digital-products (last visited Nov. 27, 2023).

companies "building digital products" must stay abreast of and comply with the regulations.[25]

40.    Plaintiffs' financial institutions—Vio Bank and Flagstar Bank—are just two of the multiple financial institutions who use MOVEit and are Progress customers. Progress had—and breached—its duty to safeguard, secure, and protect Plaintiffs' PII, including their financial information, and are therefore "on the line" for the Data Breach.

41.    Despite its responsibilities, duties, commitments, representations, and assurances, Progress failed to adequately safeguard, secure and protect Plaintiffs' and other consumers' PII collected from its clients, allowing that Personal Information to be accessed and exposed by an unauthorized third party.

## C.    Progress Anticipated the Risks to Consumers' Personal Identifiable Information Posed by Cybercriminals and Knew it Was Vulnerable

42.    Progress knew or should have known that its systems were inadequate to protect customers' PII from exposure and exfiltration.

43.    Indeed, Progress has exposed data to unauthorized third parties in the past, including in December 2022. During that incident, Progress and outside advisors "uncovered evidence of unauthorized access to our corporate network, including evidence that certain company data had been exfiltrated." [26] Progress recognized harms akin to the ones resulting from the instant data breach, stating that "[a]s demonstrated by this cyber incident, due to the actions of outside parties, employee error, malfeasance, or otherwise, an unauthorized party may obtain access to our data or our customers' data, which could result in its theft, destruction, corruption or misappropriation and thus legal and financial exposure." [27]

---

[25] *Id*.
[26] *See* 2022 Form 10-K at 12; *see also* Form 8-K filed 12/19/2022, https://investors.progress.com/staticfiles/b1f73d79-c30d-4044-ac0a-7f0f2963f8cb (last visited Oct. 27, 2023).
[27] *See supra* at n. 23, 2022 Form 10-K at 12.

44.     Additionally, Progress identified that "[s]ecurity risks in recent years have increased significantly" and admitted that "our security measures could be compromised, could prove to be inadequate, or could fail." [28] This could result in "significant legal and financial exposure, increased costs to defend litigation, indemnity and other contractual obligations, government fines and penalties, damage to our reputation and our brand, and a loss of confidence in the security of our products and services that could potentially have an adverse effect on our business and results of operations." [29]

45.     This experience is proof that Progress was aware of the increasing risks of cyberattacks and its own vulnerabilities, that put PII at risk of breach and allowed the Data Breach to occur here.

46.     Progress's experiences in past data breaches of customer information together with its recognition of its legal obligation to protect such information, is proof that Progress knew or should have known that it had an obligation to safeguard customers' information, including customers' PII.

47.     Yet, despite this knowledge, Progress failed to employ adequate cybersecurity measures to prevent a third party, CL0P, from gaining unauthorized access to consumers' PII through known vulnerabilities in the Progress systems and exposing it during the Data Breach.

**D.      Progress Failed to Comply with Government and Industry Standards for Protecting Consumers' Personal Identifiable Information, Causing the Data Breach to Occur**

48.     The Federal Trade Commission Act Section 5 (15 U.S.C. §45) prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by a business, such as Defendant, of failing to use reasonable measures to protect

---

[28] *Id.*
[29] *Id.*

PII and financial information.

49.    Further, the Federal Trade Commission provides guidance to businesses so that they protect personal information in their possession, custody, or control. The FTC advises businesses not to keep sensitive PII or to keep it only as long as it is necessary to do so. [30]

50.    Additionally, the FTC admonishes businesses not to retain the account number and expiration date of credit card information unless the business has an "essential business need to do so," in part because "keeping this information—or keeping it longer than necessary—raises the risk that the information could be used to commit fraud or identity theft." [31]

51.    Given that Progress itself does not have need to retain the sensitive financial information of consumers, including the bank account information of Plaintiffs, Progress failed to comply with FTC guidance admonishing that Progress either not retain or destroy such sensitive PII in its systems.

52.    Further, regarding network security, the FTC admonishes, *inter alia*, that businesses such as Progress:

- Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.
- Encrypt sensitive information that you send to third parties over public networks (like the internet), and encrypt sensitive information that is stored on your computer network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.
- When you receive or transmit credit card information or other sensitive financial data, use Transport Layer Security (TLS) encryption or another secure connection that protects the information in transit.[32]

---

[30] *See* FTC, *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed Nov. 27, 2023).
[31] *Id.*
[32] *Id.*

53.     By failing to adequately protect consumers' personal information, including their PII, Progress failed to comply with government and industry standards and unreasonably exposed Plaintiffs' PII to unauthorized third-party use.

**E.     Effects of the Data Breach**

54.     It is well known that PII is a highly valued commodity and a frequent target of hackers. Here, the failure of Progress to comply with government and industry guidance, standards, and best practices left Plaintiffs and Class Members vulnerable, exposing their most private and valuable accounts to third party access.

55.     PII is such a valuable commodity to identity thieves that, once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

56.     Thus, Plaintiffs and Class Members must vigilantly monitor their credit reports, financial accounts, and other areas of concern for the foreseeable future.

57.     There may be a significant time lag between when PII is stolen and when it is actually misused.

58.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data
> may be held for up to a year or more before being used to commit
> identity theft. Further, once stolen data have been sold or posted on
> the Web, fraudulent use of that information may continue for years.
> As a result, studies that attempt to measure the harm resulting from
> data breaches cannot necessarily rule out all future harm.[33]

59.     As the result of the Data Breach, Plaintiffs and Class Members have suffered or will suffer economic loss and other actual harm for which they are entitled to damages, including,

---

[33] U.S. Government Accountability Office, *Report to Congressional Requesters* (June 2007), https://www.gao.gov/assets/gao-07-737.pdf  (last visited Nov. 28, 2023).

but not limited to, the following:

    a.    identity theft and fraud resulting from theft of their PII;

    b.    costs associated with the detection and prevention of identity theft and unauthorized use of their online accounts, including financial accounts;

    c.    losing the inherent value of their PII;

    d.    costs associated with purchasing credit monitoring and identity theft protection services;

    e.    unauthorized access to and misuse of their online accounts;

    f.    unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

    g.    costs associated with time spent and the loss of productivity or enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, addressing other varied instances of identity theft – such as credit cards, bank accounts, loans, government benefits, and other services procured using the stolen PII, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach;

h.     the continued imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being in the possession of one or more unauthorized third parties; and

i.     continued risk of exposure to hackers and thieves of their PII, which remains in Progress's possession and is subject to further breaches so long as Progress fails to undertake appropriate and adequate measures to protect Plaintiffs and Class Members.

60.     Additionally, Plaintiffs and Class Members place significant value in data security. According to a survey conducted by cyber-security company FireEye, approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more in order to work with a provider that has better data security. Likewise, 70% of consumers would provide less personal information to organizations that suffered a data breach.[34]

61.     One study on privacy determined that U.S. consumers valued the restriction of improper access to their personal information – the very injury at issue here – between $11.33 and $16.58 per website. The study also determined that "[a]mong U.S. subjects, protection against errors, improper access, and secondary use of personal information is worth US$30.49 – 44.62."[35] This study was done in 2002, almost twenty years ago. The sea-change in how pervasive the Internet is in everyday lives since then indicates that these values—when associated with the loss of PII to bad actors—would be much higher today.

---

[34] FireEye, *Beyond the Bottom Line: The Real Cost of Data Breaches* (May 11, 2016), https://www.fireeye.com/blog/executive-perspective/2016/05/beyond_the_bottomli.html (last visited March 5, 2021).

[35] Hann, Hui, *et al*, The Value of Online Information Privacy: Evidence from the USA and Singapore, at 17, Oct. 2002, *available at* https://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited March 5, 2021).

62.     As a sophisticated software company engaged in the collection, distribution, sharing, and sale of consumers' Personal Information, Progress knew it subjected itself to FTC requirements to comply with provisions designed to protect the privacy of consumer's PII.

63.     Progress knew or should have known that consumer's PII is a valuable target for criminals. Progress should have taken adequate steps to protect that PII from Data Breaches.

64.     Progress failed to take reasonable and adequate steps to prevent customers' PII from being accessed by an unauthorized party and exposed in the Data Breach.

**F.     Plaintiffs' Experiences**

65.     Plaintiff Arayik Shahbazian is a resident and citizen of California. Plaintiff Shahbazian is acting on his own behalf and on behalf of those similarly situated. Progress obtained and continues to maintain Plaintiff Shabazian's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

66.     Progress has a further duty to provide Plaintiff Shahbazian with prompt and accurate notice when his PII has been accessed and disclosed by unauthorized parties in a data breach on Progress's servers.

67.     Had Plaintiff Shahbazian known that one of the customer's information technology vendors entrusted with his PII failed to maintain adequate data security, Plaintiff Shahbazian would not have entrusted his PII to one or more of Progress's customers.

68.     Plaintiff Shahbazian's Personal Information was accessed by an unauthorized party, CL0P, and disclosed as a result of the Data Breach.

69.     On August 18, 2023, Plaintiff Shahbazian received a Notice of Data Breach from his bank, Vio Bank. Vio Bank contracts with Progress for the use of its third-party file transfer platform, MOVEit. The Notice to Plaintiff Shahbazian states:

> One of our service providers recently notified us that they were

> affected by a data security incident that was the result of a
> vulnerability in their third-party file transfer platform, MOVEit,
> between May 27-31, 2023. As a result, an unauthorized party was
> able to download files from the MOVEit platform. Vio was one of a
> multitude of organizations that were affected by this data security
> incident.

*See* **Exhibit A**, Vio Bank Notice of Data Breach at 1 (dated Aug. 18, 2023) (hereinafter "Vio Bank

Notice" or "Exhibit A"). The Vio Bank notice further states that "certain files containing Vio

customer information were involved," including those "files that contained [Plaintiff

Shahbazian's] name, social security number and account number(s), among other information."

*Id.*

70.     Plaintiff Shahbazian provided his PII to Vio Bank in order to obtain financial

services and therefore indirectly provided his information to Progress. Plaintiff Shahbazian would

not have entrusted his PII to Progress if he did not believe that Progress would adequately

safeguard his PII and notify him in the event his PII was accessed and exposed by an unauthorized

third party, such as CL0P, in a data breach.

71.     As a result of Progress's Data Breach, Plaintiff Shahbazian was harmed by

receiving a significant increase in spam and phishing emails and must expend time to review the

emails and determine if the emails are legitimate.

72.     Progress's Data Breach has caused Plaintiff Shahbazian to experience increased

anxiety and to suffer emotional distress due to Plaintiff's loss of privacy and due to increased risk

of criminals exploiting Plaintiff's PII to commit additional crimes including fraud and identity

theft against Plaintiff. Criminals perpetrate fraud and identity theft through such means as sending

a great number of illegitimate phishing emails which are often designed to access consumers'

systems and steal consumers' financial information.

73.     Plaintiff Shahbazian has also suffered emotional distress given Plaintiffs' increased

risk of further harm given the exposure of Plaintiff's PII resulting from Defendant's failure to adequately secure and protect Plaintiff's PII. Criminals steal PII to perpetrate further crimes including identity theft and fraud. Progress's exposure of Plaintiffs' PII directly harmed Plaintiff by greatly increasing the risk of Plaintiff becoming a victim of identity theft or fraud.

74.     Progress also harmed Plaintiff Shahbazian through causing Plaintiff to spend time mitigating the additional imminent harm that is at a greatly increased risk of occurring through the actions of criminals who were able to access Plaintiff's exposed PII as a direct and proximate result of Progress's Data Breach.

75.     Plaintiff Shahbazian's PII would not have been accessed and exposed by an unauthorized third party if Progress had fulfilled its responsibility to safeguard his PII through adequate security practices.

76.     Plaintiff Mike Spanos is a resident and citizen of California. Plaintiff Spanos is acting on his own behalf and on behalf of those similarly situated. Progress obtained and continues to maintain Plaintiff Spanos's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure.

77.     Progress has a further duty to provide Plaintiff Spanos with prompt and accurate notice when his PII has been accessed and disclosed by unauthorized parties in a data breach on Progress's servers.

78.     Had Plaintiff Spanos known that one of the customer's information technology vendors entrusted with his PII failed to maintain adequate data security, Plaintiff Spanos would not have entrusted his PII to one or more of Progress's customers.

79.     Plaintiff Spanos's Personal Information was accessed by an unauthorized party, CL0P, and disclosed as a result of the Data Breach.

80.    On October 4, 2023, Plaintiff Spanos received a Notice of Data Breach from his

bank, Flagstar Bank. The Notice to Plaintiff Shahbazian states:

> We are contacting you regarding an incident that impacted Fiserv, a
> third-party vendor ("vendor") Flagstar Bank uses for payment
> processing and mobile banking purposes, in which some of your
> personal information was disclosed to an unauthorized party. The
> incident involved vulnerabilities discovered in MOVEit Transfer, a
> file transfer software used by our vendor to support services it
> provides to Flagstar and its related institutions. MOVEit is a
> commonly used secure Managed File Transfer (MFT) software
> supporting file transfer activities by thousands of organizations
> around the world. Impo1tantly, the vulnerability discovered in
> MOVEit did not involve any of Flagstar Bank's systems and did not
> impact our ability to service our customers. Our vendor promptly
> launched an investigation into the nature and scope of the MOVEit
> vulnerability's impact on its systems and discovered that the
> unauthorized activity in the MOVEit Transfer environment occurred
> between May 27 and 31, 2023, which was before the existence of
> this vulnerability was publicly disclosed. During that time,
> unauthorized actors obtained our vendor's files transferred via
> MOVEit. These files included Flagstar Bank and related institution
> customer information, including yours.

*See* **Exhibit B**, Flagstar Bank Notice of Data Breach (dated Oct. 4, 2023) (hereinafter "Flagstar

Bank Notice" or "Exhibit B").

81.    The Flagstar Bank Notice further states that, on September 22, 2023, its vendor

"determined that one or more of the files may have contained information including [Plaintiff

Spanos's] name, address, Social Security number, account number, and date of birth." *Id.*

82.    Plaintiff Spanos provided his PII to Flagstar Bank in order to obtain financial

services and therefore indirectly provided his information to Progress. Plaintiff Spanos would not

have entrusted his PII to Progress if he did not believe that Progress would adequately safeguard

his PII and notify him in the event his PII was accessed and exposed by an unauthorized third party,

such as CL0P, in a data breach.

83.    As a result of Progress's Data Breach, Plaintiff Spanos was harmed by receiving a

significant increase in spam and phishing emails and must expend time to review the emails and determine if the emails are legitimate.

84.    Progress's Data Breach has caused Plaintiff Spanos to experience increased anxiety and to suffer emotional distress due to Plaintiff's loss of privacy and due to increased risk of criminals exploiting Plaintiff's PII to commit additional crimes including fraud and identity theft against Plaintiff. Criminals perpetrate fraud and identity theft through such means as sending a great number of illegitimate phishing emails which are often designed to access consumers' systems and steal consumers' financial information.

85.    Plaintiff Spanos has also suffered emotional distress given Plaintiffs' increased risk of further harm given the exposure of Plaintiff's PII resulting from Defendant's failure to adequately secure and protect Plaintiff's PII. Criminals steal PII to perpetrate further crimes including identity theft and fraud. Progress's exposure of Plaintiffs' PII directly harmed Plaintiff by greatly increasing the risk of Plaintiff becoming a victim of identity theft or fraud.

86.    Progress also harmed Plaintiff Spanos through causing Plaintiff to spend time mitigating the additional imminent harm that is at a greatly increased risk of occurring through the actions of criminals who were able to access Plaintiff's exposed PII as a direct and proximate result of Progress's Data Breach.

87.    Plaintiff Spanos's PII would not have been accessed and exposed by an unauthorized third party if Progress had fulfilled.

## V.    CLASS ACTION ALLEGATIONS

88.    Plaintiffs bring this action on their own behalf and on behalf of all natural persons similarly situated, as referred to throughout this Complaint as "Class Members."

89.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs propose the following Class definitions,

subject to amendment as appropriate:

**Nationwide Class:** All natural persons residing in the United States whose PII was compromised, extracted, copied, stolen, or otherwise exposed to unauthorized parties as a result of the Data Breach.

**California Subclass**: All natural persons residing in the State of California whose PII was compromised, extracted, copied, stolen, or otherwise exposed to unauthorized third parties as a result of the Data Breach.

90.    Excluded from the Class and Subclass are Progress's officers, directors, and employees; any entity in which Progress has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Progress. Excluded also from the Class and Subclass are members of the judiciary to whom this case is assigned, their families and members of their staff.

91.    **Numerosity.** The members of the Class (and Subclass) are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, as of August 8, 2023, the Class consists of over 40 million persons whose data was compromised in the Data Breach, who can be identified by reviewing the PII exfiltrated from Progress's databases.[36]

92.    **Commonality.** There are questions of law and fact common to Plaintiffs and Class Members, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

        a.    Whether Progress's data security systems and/or protocol prior to and during the Data Breach complied with applicable data security laws and regulations;

---

[36] *See* supra at n. 1, Raphael Satter and Zeba Siddiqui, "MOVEit hack spawned over 600 breaches but is not done yet -cyber analysts" REUTERS, Aug. 8 2023, https://www.reuters.com/technology/moveit-hack-spawned-around-600-breaches-isnt-done-yet-cyber-analysts-2023-08-08/.

b.      Whether Progress' data security systems and/or protocol prior to and during the Data Breach were consistent with industry standards and best practices;

c.      Whether Progress properly implemented its purported security measures to protect Plaintiffs' and the Class's PII from unauthorized capture, dissemination, and misuse;

d.      Whether Progress took reasonable measures to determine the extent of the Data Breach after it first learned of same;

e.      Whether Progress disclosed Plaintiffs' and the Class's PII in violation of the understanding that the PII was being disclosed in confidence and should be maintained;

f.      Whether Progress willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiffs' and the Class's PII;

g.      Whether Progress was negligent in failing to properly secure and protect Plaintiffs' and the Class's PII; and

i.      Whether Plaintiffs and the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

93.    **Typicality.** Plaintiffs' claims are typical of those of the Class Members because Plaintiffs' PII, like that of every Class Member, was compromised in the Data Breach.

94.    **Adequacy of Representation.** Plaintiffs will fairly and adequately represent and protect the interests of Class Members, including those from states and jurisdictions where they do not reside. Plaintiffs' Counsel are competent and experienced in litigating class actions and have been appointed lead counsel by many different courts in many other class action suits.

95.    **Predominance.** Progress has engaged in a common course of conduct toward Plaintiffs and Class Members, in that all Plaintiffs' and Class Members' data at issue here was secured by Progress and accessed during the Data Breach. The common issues arising from Progress's conduct affecting Class Members, as described supra, predominate over any individualized issues. Adjudication of the common issues in a single action has important and desirable advantages of judicial economy.

96.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Progress. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

97.    **Injunctive Relief is Appropriate.** Progress has failed to take actions to safeguard Plaintiffs' and Class Members' PII such that injunctive relief is appropriate and necessary. Plaintiffs have acted on grounds that apply generally to the Class (and Subclasses) as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## VI.        CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

**(On behalf of the Nationwide Class and the California Subclass)**

98.     Plaintiffs restate and reallege all preceding allegations above and hereafter as if fully set forth herein.

99.     Plaintiffs brings this Count under Massachusetts Law individually and on behalf of the Nationwide Class and/or California Subclass ("Class") against Defendant.

100.    At all times herein relevant, Defendant owed Plaintiffs and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their PII and financial information and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the PII and financial information of Plaintiffs and Class Members in their computer systems and on their networks. These common law duties existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices in Progress's affirmative development and maintenance of its data security systems.

101.    Among these duties, Defendant was expected:

    a.      to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII and financial information in their possession;

    b.      to protect Plaintiffs' and Class Members' PII and financial information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c.    to implement processes to quickly detect the Data Breach and to act on warnings about data breaches timely; and

d.    to promptly notify Plaintiffs and Class Members of any data breach, security incident, or intrusion that affected or may have affected their PII and financial information.

102.    Defendant knew that the PII and financial information were private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiffs and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

103.    Defendant knew, or should have known, of the risks inherent in collecting and storing PII and financial information, the vulnerabilities of their data security systems, and the importance of adequate security. Defendant knew about numerous, well-publicized data breaches.

104.    Defendant knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiffs' and Class Members' PII and financial information.

105.    Only Defendant was in the position to ensure that their systems and protocols were sufficient to protect the PII and financial information that Plaintiffs and Class Members had entrusted to them.

106.    Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII and financial information of Plaintiffs and Class Members.

107.    Because Defendant knew that a breach of its systems could damage thousands of individuals, including Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the PII and financial information contained therein.

108.    Had Plaintiffs known that Defendant, who they entrusted with their PII, failed to maintain adequate data security, Plaintiffs would not have entrusted their PII to one or more of Progress's customers. Moreover, Defendant had the ability to protect its systems and the PII and financial information they stored on them from attack. Thus, Defendant had a special relationship with Plaintiffs and Class Members.

109.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiffs' and Class Members' PII and financial information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant and Plaintiffs and/or Class Members.

110.    Defendant breached their general duty of care to Plaintiffs and Class Members in, but not necessarily limited to, the following ways:

            a.    by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the PII and financial information of Plaintiffs and Class Members;

            b.    by failing to timely and accurately disclose that Plaintiffs' and Class Members' PII and financial information had been improperly acquired or accessed;

            c.    by failing to adequately protect and safeguard the PII and financial information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII and financial information;

            d.    by failing to provide adequate supervision and oversight of the PII and financial information with which it was and is entrusted, in spite of the

28

known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII and financial information of Plaintiffs and Class Members, misuse the PII and intentionally disclose it to others without consent.

      e.     by failing to adequately train its employees to not store PII and financial information longer than absolutely necessary;

      f.     by failing to consistently enforce security policies aimed at protecting Plaintiffs' and the Class Members' PII and financial information;

      g.     by failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

      h.     by failing to encrypt Plaintiffs' and Class Members' PII and financial information and monitor user behavior and activity in order to identify possible threats.

111.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

112.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiffs and Class Members have suffered damages and are at imminent risk of additional harm and damages (as alleged above).

113.    The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PII and financial information to Plaintiffs and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PII and financial information.

114.    Further, through its failure to provide timely and clear notification of the Data

Breach to Plaintiffs and Class Members, Defendant prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their PII and financial information.

115.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII and financial information of Plaintiffs and Class Members and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class Members. Plaintiffs' and Class Members' PII and financial information were accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII and financial information by adopting, implementing, and maintaining appropriate security measures.

116.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

117.    The damages Plaintiffs and Class Members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

118.    Additionally, 15 U.S.C. §45 (FTC Act, Section 5) prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by a business, such as Defendant, of failing to use reasonable measures to protect PII and financial information. The FTC publications and orders described above also form part of the basis of Defendant's duty.

119.    Defendant violated 15 U.S.C. §45 by failing to use reasonable measures to protect PII and financial information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and financial information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and Class Members.

120.    Defendant's violation of 15 U.S.C. §45 constitutes negligence per se.

121.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of the opportunity of how their PII and financial information is used, (iii) the compromise, publication, and/or theft of their PII and financial information, (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and financial information, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft, (vi) the continued risk to their PII and financial information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' PII and financial information in their continued possession, and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and financial information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

122.    As a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

123.    Additionally, as a direct and proximate result of Defendant's negligence and negligence per se, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their PII and financial information, which remain in Defendant's possession and

are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and financial information in its continued possession.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**

**(On behalf of the Nationwide Class and the California Subclass)**

124.    Plaintiffs restate and reallege all preceding allegations above and hereafter as if fully set forth herein.

125.    Plaintiffs brings this Count under Massachusetts Law individually and on behalf of the Nationwide Class and/or California Subclass ("Class") against Defendant.

126.    Through their course of conduct, Defendant, Plaintiffs, and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class.

127.    Plaintiffs and Class Members were required to indirectly deliver their PII to Progress as part of the process of obtaining services provided by Progress. Plaintiffs and Class Members paid money, or money was paid on their behalf, to Progress in exchange for services.

128.    Progress accepted possession of Plaintiffs' and Class Members' PII for the purpose of indirectly providing services to Plaintiffs and Class Members.

129.    In accepting such information and payment for services, Progress entered into an implied contract with Plaintiffs and the other Class Members whereby Progress became obligated to reasonably safeguard Plaintiffs' and the other Class Members' PII.

130.    Alternatively, Plaintiff and Class Members were the intended beneficiaries of data protection agreements entered into between Progress and Progress customers, including financial institutions.

131.    Progress's implied promise of confidentiality includes consideration beyond those

32

preexisting general duties owed under the FTC Act, California Customer Records Act, or other federal and state regulations. The additional consideration also included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

132.    Progress's implied promises include but are not limited to the adequate safeguarding of Plaintiffs and Class Members' PII in accordance with legal and industry standards.

133.    Plaintiffs and the Class Members would not have entrusted their Personal Information to Progress in the absence of such an implied contract.

134.    Had Progress disclosed to Plaintiffs and Class Members (or their financial institutions) that Progress did not have adequate computer systems, information technology security tools, and security practices to secure sensitive data, Plaintiffs and the other Class Members would not have provided their PII to Progress (or to their financial institutions to provide to Progress).

135.    Progress recognized that Plaintiffs' and Class Members' Personal Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and to the other Class Members.

136.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

137.    Defendant breached the implied contracts they made with Plaintiffs and Class Members by failing to safeguard and protect their PII and financial information and by failing to provide timely and accurate notice to them that their PII and financial information was compromised as a result of the Data Breach.

138.    As a direct and proximate result of Defendant's above-described breach of implied

contract, Plaintiffs and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and the impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web, (e) lost work time and (f) other economic and non-economic harm. Members' PII and financial information.

## COUNT III
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT

### (On behalf of the Nationwide Class and the California Subclass)

139.    Plaintiffs restate and reallege all preceding allegations above and hereafter as if fully set forth herein.

140.    Plaintiffs brings this Count under Massachusetts Law individually and on behalf of the Nationwide Class and/or California Subclass ("Class") against Defendant.

141.    Plaintiffs bring this claim in the alternative to their breach of implied contract claim.

142.    Upon information and belief, Progress entered into nearly identical contracts with its customers to provide secure file transfer services to them; services that included data security practices, procedures, and protocols sufficient to safeguard the PII that was entrusted to it.

143.    Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their PII that Defendant agreed to receive and protect through its services.

144.    Thus, the benefit of collection and protection of the PII belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties and Plaintiffs and Class Members were direct and express beneficiaries of such contracts.

145.    Progress knew or should have known that if it were to breach these contracts with its customers, Plaintiff and Class Members would be harmed.

146.    Progress breached its contracts with customers by, among other things, failing to adequately secure Plaintiffs' and Class Members' PII, and, as a result, Plaintiff and Class Members were harmed by Progress's failure to secure their PII.

147.    As a direct and proximate result of Defendant's above-described breach of third-party beneficiary contract, Plaintiffs and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and the impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web, (e) lost work time and (f) other economic and non-economic harm. Members' PII and financial information.

148.    Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

149.    Plaintiffs and Class Members are also entitled to injunctive relief requiring Progress to be in alignment with legal and industry standards for safeguarding PII such as Plaintiffs and Class Members.

## COUNT IV
## UNJUST ENRICHMENT

**(On behalf of the Nationwide Class and the California Subclass)**

150.    Plaintiffs restate and reallege all preceding allegations above and hereafter as if fully set forth herein.

151.    Plaintiffs brings this Count under Massachusetts Law individually and on behalf of the Nationwide Class and/or California Subclass ("Class") against Defendant.

152.    This count is pleaded in the alternative to any breach of contract claim.

153.    By its wrongful acts and omissions described herein, Defendant has obtained a

benefit by unduly taking advantage of Plaintiffs and Class Members.

154.    Defendant, prior to and at the time Plaintiffs and Class Members entrusted their PII and financial information to Defendant for the purpose of obtaining services through Defendant's customers, caused Plaintiffs and Class Members to reasonably believe that Defendant would keep such PII and financial information secure.

155.    Defendant was aware, or should have been aware, that reasonable consumers would have wanted their PII and financial information kept secure and would not have contracted with Defendant's customers, directly or indirectly, had they known that Defendant's information systems were sub-standard for that purpose.

156.    Defendant was also aware that, if the substandard condition of and vulnerabilities in their information systems were disclosed, they would negatively affect Plaintiffs' and Class Members' decision to seek services therefrom.

157.    Defendant failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiffs and Class Members made their decisions to make purchases, engage in commerce therewith, and seek services or information from Defendant's customers.

158.    Instead, Defendant suppressed and concealed such information. By concealing and suppressing that information, Defendant denied Plaintiffs and Class Members the ability to make a rational and informed purchasing decision and took undue advantage of Plaintiffs and Class Members.

159.    Defendant was unjustly enriched at the expense of Plaintiffs and Class Members. Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiffs and Class Members. By contrast, Plaintiffs and Class Members did not receive the benefit of their

bargain because they paid for products and/or services that did not satisfy the purposes for which they bought/sought them.

160.    Since Defendant' profits, benefits and other compensation were obtained by improper means, Defendant is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized from these transactions.

161.    Plaintiffs and Class Members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits, or other compensation obtained by Defendant from their wrongful conduct and/or the establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

**COUNT V**
**INVASION OF PRIVACY**

**(On Behalf of the Nationwide Class and the California Subclass)**

162.    Plaintiffs restate and reallege all preceding allegations above and hereafter as if fully set forth herein.

163.    Plaintiffs brings this Count under Massachusetts Law individually and on behalf of the Nationwide Class and/or California Subclass ("Class") against Defendant.

164.    Plaintiffs and Class Members have a legally protected privacy interest in their PII, which is and was collected, stored, and maintained by Progress, and they are entitled to the reasonable and adequate protection of their PII against foreseeable unauthorized access, as occurred with the Data Breach.

165.    Plaintiffs and Class Members reasonably expected that Progress would protect and secure PII from unknown and unauthorized parties and that their PII would not be accessed and disclosed to any unauthorized parties or for any improper purpose.

166.    Progress unlawfully invaded the privacy rights of Plaintiffs and Class Members by

37

engaging in the conduct described above, including by failing to protect their PII by permitting an unauthorized and unknown party to access and expose that PII. Similarly, Progress further invaded the privacy rights of Plaintiffs, Class Members, and permitted criminals to invade the privacy rights of Plaintiffs and Class Members, by unreasonably delaying disclosure of the Data Breach, and failing to properly identify what PII had been accessed and exposed by an unknown and unauthorized party.

167.    This invasion of privacy resulted from Progress's failure to properly secure and maintain Plaintiffs' and Class Members' PII, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unprotected data.

168.    Plaintiffs' and Class Members' PII is the type of sensitive information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiffs' and Class Members' PII, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

169.    The disclosure of Plaintiffs and Class Members' PII to unknown and unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

170.    The unauthorized access, exfiltration, and disclosure of Plaintiffs' and Class Members' PII was without their consent, and in violation of various statutes, regulations and other laws.

171.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

<u>COUNT VI</u>

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF.**

**CODE § 17200 ET SEQ.**

**(On Behalf of the California Subclass)**

172.    Plaintiffs restate and reallege all preceding allegations above and hereafter as if fully set forth herein.

173.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

174.    Defendant violated Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

    a.    Defendant failed to implement and maintain reasonable security measures to protect Plaintiffs and the California Subclass Members from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

    b.    Defendant failed to:

        i.    Secure its website;

        ii.    Secure access to its servers;

        iii.    Comply with industry-standard security practices;

        iv.    Employ adequate network segmentation;

        v.    Implement adequate system and event monitoring;

        vi.    Utilize modern payment systems that provide more security against intrusion;

        vii.    Install updates and patches in a timely manner, and

        vii.    Implement the systems, policies, and procedures necessary to prevent this type of data breach.

c.      Defendant failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiffs and the California Subclass Members whose PII has been compromised;

d.      Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumer data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTCA, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code §§ 1798.81.5 et seq., and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 et seq.;

e.      Defendant's failure to implement and maintain reasonable security measures also led to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiffs and the California Subclass Members could not know of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused;

f.      Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and the California Subclass Members' PII, including by implementing and maintaining reasonable security measures;

g.      Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and the California Subclass Members' PII, including duties imposed by the FTCA, 15 U.S.C

40

§ 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, et seq.; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 et seq.;

h.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and the California Subclass Members' PII;

i.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and the California Subclass Members' PII, including duties imposed by the FTCA, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, et seq.; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 et seq.;

j.    Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82; and

k.    Other ways to be discovered and proved at trial.

175.    Defendant's representations and material omissions of fact, as alleged herein, to Plaintiffs and the California Subclass Members were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the privacy of consumers' PII.

176.    Defendant intended to mislead Plaintiffs and the California Subclass Members and induce them to rely on their misrepresentations and material omissions of fact as alleged herein.

177.    Had Defendant disclosed to Plaintiffs and the California Subclass Members that their data systems were not secure and, thus, vulnerable to attack, Defendant would have been

unable to continue in business, and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant received, maintained, and compiled Plaintiffs and the California Subclass Members' PII as part of the services and goods Defendant provided without advising Plaintiffs and the California Subclass Members that Defendant's data security practices were insufficient to maintain the safety and confidentiality of Plaintiffs and the California Subclass Members. Accordingly, Plaintiffs and the California Subclass Members acted reasonably in relying on Defendant's misrepresentations and material omissions of fact, the truth of which they could not have discovered.

178.    Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and the California Subclass Members' rights.

179.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and the California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

180.    Plaintiffs and the California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their PII; declaratory relief; injunctive relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

181.    Plaintiffs and California Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (a) strengthen their data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) continue to

provide adequate credit monitoring to all California Class Members.

**COUNT VII**
**VIOLATION OF CALIFORNIA CUSTOMER RECORDS ACT ("CCRA")**
**CAL. CIV. CODE § 1798.80** *ET SEQ.*

**(On behalf of the California Subclass)**

182.    Plaintiffs restate and reallege all preceding allegations above and hereafter as if fully set forth herein.

183.    This Count is brought on behalf of Plaintiffs and the California Subclass against Defendant.

184.    "[T]o ensure that Personal Information about California residents is protected," the California legislature enacted Cal. Civ. Code §1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

185.    Each Defendant is a business that maintains PII about Plaintiffs and California Subclass Members within the meaning of Cal. Civ. Code §1798.81.5.

186.    As a direct and proximate result of Defendant' violations of the Cal. Civ. Code §1798.81.5, Plaintiffs and California Subclass members suffered damages, as described above and as will be proven at trial.

187.    Plaintiffs and California Subclass members seek relief under Cal. Civ. Code §1798.84, including actual damages, civil penalties, injunctive relief, and reasonable attorneys' fees and costs.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Progress as follows:

1.      That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under Federal Rule of Civil Procedure 23, including the appointment of Plaintiffs' counsel as Class Counsel;

2.      For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Defendant, ordering them to cease and desist from unlawful activities;

4.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

5.      For injunctive relief requested by Plaintiffs, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an Order:

      a.   declaring that Progress owes a legal duty to Plaintiffs and Class Members to secure their PII obtained through Progress's customers and to timely notify Plaintiffs and Class Members of a data breach under law;

      b.   declaring that Progress breached and continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs' and Class Members'

PII;

c.  declaring that Progress's breach of its legal duty continues to cause harm to Plaintiffs and the Class;

d.  issuing corresponding prospective injunctive relief requiring Progress to employ adequate security protocols consistent with law and industry standards to protect Plaintiffs' and Class Members' PII.

6.  For prejudgment interest on all amounts awarded;

7.  For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

8.  For all other Orders, findings, and determinations identified and sought in this Complaint.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: November 29, 2023                    Respectfully Submitted,

*/s/ Patrick J. Sheehan*
Patrick J. Sheehan (BBO 639320)
**WHATLEY KALLAS LLP**
101 Federal Street | 19th Floor
Boston, MA 02110
*psheehan@whatleykallas.com*
(617) 203-8459

Andrea R. Gold (*pro hac vice* forthcoming)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW | Suite 1010
Washington, DC 20006
*agold@tzlegal.com*
(202) 973-0900

*Counsel for Plaintiffs and the Proposed Class*